IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES,** | * | |
| *Plaintiff,* | * | |
| | * | Case No.: 8:20-cr-00262-PWG |
| v. | * | |
| **JOHNNIE CURRIE,** | * | |
| *Defendants.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

This Memorandum Opinion supplements my ruling on Mr. Currie's Motion to Suppress in light of the parties' supplemental briefing regarding Mr. Currie's standing to challenge the searches and seizures police executed on two cell phones, which the Government alleges do not belong to Mr. Currie, but to the alleged victim in this case. For the reasons explained below Mr. Currie's Motion to Suppress the evidence obtained from those cell phones is GRANTED in part, and DENIED in part.

BACKGROUND

Mr. Currie moved to suppress cell phone evidence disclosed by his cell phone provider (Sprint) pursuant to two search warrants issued by this Court. ECF 31, Motion to Suppress. The warrants directed Sprint to "disclose to the government" a substantial amount of information associated with three different cell phones and their customers or subscribers. April Warrant, ECF 34-2; June Warrant, ECF 34-3. The first cell phone, with phone number ending in -7790, is identified in the warrants as Target Phone 1. *Id.* Target Phone 1 is Mr. Currie's personal cell

phone—the parties do not dispute that he has standing to challenge the search and seizure of all data related to Target Phone 1. Gov't Opp. at 6. The second phone, with phone number ending -8447, is identified in the warrants as Target Phone 2. April Warrant at 8; June Warrant at 3. The affidavit in support of the warrants indicates that Target Phone 2 is the victim's personal cell phone, and that it was in her possession at all times relevant to this action. *Id.* The third and final phone, with phone number ending -5176, is identified in the warrants as Target Phone 3. *Id.* The Government alleges that Target Phone 3 also belongs to the victim, but does not dispute that it was in Mr. Currie's possession at all times relevant to this action.

The April Warrant sought a broad range of information about the subscribers of each cell phone account including, for example: their names, usernames, and screen names; their mailing, residential, business, and email addresses; their telephone connection records; records of session times and durations; the type of services utilized; the means and source of payment for those services; and the billing records for each account. April Warrant at Attachment B. The April Warrant also sought the cell site location information ("CSLI") for all three phones.[1] *Id*. The June Warrant was more limited in scope, and directed Sprint to disclose the "PCMD – Per Call Measurement Data," for all three phones. June Warrant at Attachment B. Both Warrants sought the information described therein for the date range of February 7, 2020 to February 12, 2020.

At a July 2, 2021 suppression hearing, I concluded following oral arguments that the April Warrant, with one limited exception, was not supported by probable cause because the

---

[1] The U.S. Supreme Court provides the following helpful definition of CSLI: "Cell phones continuously scan their environment looking for the best signal, which generally comes from the closest cell site. Most modern devices, such as smartphones, tap into the wireless network several times a minute whenever their signal is on, even if the owner is not using one of the phone's features. Each time the phone connects to a cell site, it generates a time-stamped record known as cell-site location information (CSLI)." *U.S. v. Carpenter* 138 S. Ct. 2206, 2211 (2018).

Government failed to establish any nexus between the information sought in the April Warrant and the assault and kidnapping allegedly committed by Mr. Currie. With respect to the June Warrant, I concluded that the failure of the warrant application to explain the meaning of "Per Call Measurement Data," a term with which the warrant's affiant was unfamiliar, and the failure to identify the nexus between the Per Call Measurement Data and the alleged offenses, rendered it lacking in probable cause entirely. The only evidence derived from the warrants that I found was properly supported by probable cause was the cell tower location information for February 9, 2020, the date of the alleged kidnapping and assault.

The Government argued at the suppression hearing that Mr. Currie lacked standing to challenge the constitutionality of the search and seizure of the information related to Target Phones 2 and 3 because those phones belong to the alleged victim. I ordered supplemental briefing on that issue. I then granted Mr. Currie's Motion to Suppress with respect to all evidence obtained from Target Phone 1 (Mr. Currie's personal phone), ***except*** for the cell tower location information dated February 9, 2020. ECF 43, Order. I preliminarily made the same ruling with respect to the evidence obtained from Target Phones 2 and 3, subject to Mr. Currie demonstrating that he has standing to contest the searches and seizures related to those phones. *Id.*

The standing issue has been fully briefed at ECF Nos. 49 ("Supplemental Brief"), 50 ("Supplemental Opposition"), and 54 ("Supplemental Reply"). I have reviewed the parties' filings and find that a second hearing is unnecessary to finally resolve Mr. Currie's Motion to Suppress the evidence obtained via the April and June Warrants in connection to Target Phones 2 and 3. *See* Local Rule 105.6.

## DISCUSSION

The Government first challenged Mr. Currie's Fourth Amendment standing with respect to Target Phones 2 and 3 in its initial Opposition to Mr. Currie's Motion to Suppress, arguing that he could have no privacy interest in those phones because they belonged to Mr. Currie's victim. Gov't Opp. at 6. Mr. Currie responded in his initial Reply that "the ownership of the physical cell phone" is not the proper Fourth Amendment inquiry, because the protected interest at issue is Mr. Currie's "expectation of privacy in the information about his movement and location," as distinguished from any expectation of privacy in the Target Phones themselves, or their non-location-revealing data. ECF 36 at 2 (quoting *Carpenter*, 138 S. Ct. at 2217). In other words, Mr. Currie, at least initially, advanced a privacy interest specific to CSLI and other data revealing his physical location and movements.

Mr. Currie now argues that he may have a privacy interest in *all* of the information law enforcement obtained in connection with Target Phones 2 and 3. Accordingly, I will address the standing inquiry in two parts. I will address *first* whether Mr. Currie has established a Fourth Amendment interest in the Target Phones' non-CSLI information, and *second* whether he has established a Fourth Amendment interest in their CSLI.

   A. *Mr. Currie lacks standing to challenge the search and seizure of non-CSLI evidence from Target Phones 2 and 3.*

Mr. Currie's initial Motion to Suppress sought "suppression of all evidence seized pursuant to" the April and June Warrants, "including cell site location data." Motion to Suppress ¶ 2. The Government's Opposition contested Mr. Currie's standing to "challenge probable cause as to" Target Phones 2 and 3, and Mr. Currie responded that he had a reasonable expectation of privacy "in the information about his movements and location contained in CSLI and other data from

Target Phone 3." Gov't Opp. at 6; Reply at 2. His response to the Government's standing challenge in the initial briefings made no mention of Target Phone 2 and focused exclusively on CSLI. *Id.*

In his Supplemental Brief, which I ordered specifically to address Mr. Currie's Fourth Amendment standing with respect to Target Phones 2 and 3, Mr. Currie reasserts the same argument, focusing narrowly on his privacy interest in his location and movements. Mr. Currie again argues that he has a reasonable expectation of privacy specifically in CSLI tracking his location (whether the phone tracking his movements belongs to him or not) and expands his argument without explanation to encompass both Target Phones 2 and 3. Supplemental Brief at 4 ("Even Accepting that Target Phone 2 and 3 Belonged to the Alleged Victim, Mr. Currie Maintains a Reasonable Expectation of Privacy in CSLI Tracking His Movements."). Mr. Currie also states, unequivocally, that he "is not asserting a privacy interest in the actual cell phones or their contents." *Id.* at 1.

It is not until Mr. Currie's Supplemental Reply on the standing issue that he claims that he may also have a privacy interest in Target Phones 2 and 3 and the non-CSLI data obtained via the April and June Warrants. ECF 54. Mr. Currie's Supplemental Reply states:

> [E]ven if the Court accepts the government's argument that Mr. Currie would not have standing to challenge the illegal seizure of CSLI collected through phones that did not belong to him, that does not end the Court's inquiry. As stated in his previous letter, Mr. Currie does not concede the facts as alleged by the government. *See* ECF No. 49 at 2 n.1. In particular, he disputes the allegations that he lacked a possessory interest in Target Phones 2 and 3, that he stole Target Phone 3, and that he was using Target Phone 3 without the permission of the alleged victim.

*Id.* at 5.[2]

---

[2] The footnote Mr. Currie cites in the excerpt above states that he does not concede the facts alleged in the affidavit or by the Government during the suppression hearing, but assumes those facts for the purposes of his Supplemental Brief. ECF 49 at 2 n. 1. The footnote then states "[s]hould the Court determine based on the facts as alleged by the government that Mr. Currie does not have standing to move to suppress the CSLI, he reserves the right to challenge the

Mr. Currie recognizes that it is his burden to establish standing to challenge the searches of Target Phones 2 and 3, but claims that the Court must hold an additional hearing to afford Mr. Currie "the opportunity to present evidence in support of standing." *Id.* I disagree.

Mr. Currie has had ample opportunity to present arguments and evidence in support of Fourth Amendment standing with respect to the non-CSLI information seized in connection with Target Phones 2 and 3. He could have presented such argument in his Motion to Suppress, in his Reply in support of that Motion, during the July 7, 2021 suppression hearing, or in his opening Supplemental Brief that I requested specifically to resolve the Fourth Amendment standing issues in this case. But Mr. Currie elected not to present any such evidence or make any such argument, and in fact expressly *disclaimed* a privacy interest in the actual cell phones and their contents.

Mr. Currie nevertheless insists that a hearing is necessary because "whether Mr. Currie has a possessory interest in the target phones ultimately rests on the alleged victim's claims" to the contrary, and that the Court "cannot rely on the untested, unsworn declaration without providing Mr. Currie the opportunity to challenge the assertions contained therein." Supplemental Reply at

---

government's allegations at a future evidentiary hearing." Mr. Currie holds the burden of demonstrating a privacy interest in the subject phones and he was on notice that the Government challenged that interest. In light of those circumstances, it is simply not enough for him to state that he does not concede on the very issue for which I asked him to present supplemental argument, while concomitantly claiming a "right" to assert such an argument at some unspecified future time. Moreover, his attempt to "reserve" the right to file an additional motion to exclude assumes that he has not waived this right by having failed to raise it within the deadline set by the court for the filing of motions, ECF No. 28 (Order extending deadline to file pre-trial motions to April 9, 2021) which has long since passed. Thus, his efforts to reopen the time to file an additional motion to suppress is denied as untimely, Fed. R. Crim. P. 12(c)(3), because Currie has failed to show cause why he could not timely have raised the argument he now wants to "reserve" at the time he filed his other suppression motions. *United States v. Smith*, 141 F.3d 1161 (4th Cir. 1998) ("Failure to make a pretrial motion before the court's deadline shall constitute waiver ... [unless] the court for cause shown ... grant[s] relief from the waiver."); *U.S. v. Ruhe*, 191 F.3d 376, 386 (4th Cir. 1999) (Defendants are subject to a due diligence standard in filing suppression motions).

5–6. Not so. Whether or not Mr. Currie has standing to contest the illegal searches of Target Phones 2 and 3 rests on whether *Mr. Currie* has demonstrated a privacy interest in those phones or their contents. I need not, and do not, rely on the victim's assertions that she is the owner of the phones at issue in determining that Mr. Currie has not met his burden "of showing a legitimate expectation of privacy in the area searched." *United States v. Castellanos*, 716 F.3d 828, 832 (4th Cir. 2013). Rather, my ruling is based on Mr. Currie's failure to meet his affirmative burden of demonstrating that he does have a legitimate expectation of privacy to Target Phones 2 and 3.

In short, because Mr. Currie has failed to demonstrate that he has a reasonable expectation of privacy in Target Phone 2 or 3 or their the non-CSLI data, he lacks standing to challenge their search and seizure. The non-CSLI data obtained for Target Phones 2 and 3 will be admitted.

> B. *Mr. Currie has standing to challenge the search of the CSLI generated by Target Phone 3, but lacks standing with respect to Target Phone 2.*

The remaining question is whether Mr. Currie possesses a reasonable expectation of privacy in the CSLI obtained in connection with Target Phones 2 and 3, and whether that interest is protectable independent of a Fourth Amendment interest in the seizure and search of the phones themselves. For the reasons explained below, I conclude that Mr. Currie does have standing to challenge the CSLI generated by Target Phone 3, but lacks standing to challenge the CSLI generate by Target Phone 2.

Mr. Currie relies primarily on the U.S. Supreme Court's decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), and the Fourth Circuit's decision in *Leaders of a Beautiful Struggle v. Baltimore Police Department*, 2 F.4th 330 (4th Cir. 2021), in support of his claimed privacy interest in the CSLI generated by the Target Phones.

In *Carpenter*, the U.S. Supreme Court confronted the application of the Fourth Amendment to "a person's past movements through the record of his cell phone signals." The Court held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI," and that such information may lawfully be obtained from a cellular provider only via a warrant supported by probable cause. 138 S. Ct. at 2217. The Court reasoned that giving law enforcement access to CSLI contravenes public expectation that law enforcement will not "secretly monitor and catalogue" an individual's movements over a long period of time. *Id.* The Court explained that the development of cell phone technology allows the Government to "travel back in time to retrace a person's whereabouts," which is further exacerbated by the continuous nature of CSLI's creation, and the fact that individuals "compulsively carry cell phones with them all the time." *Id.* at 2218. In light of those realities, the Court rejected the Government's argument that third-party doctrine applies to CSLI, noting that the constant tracking of CSLI renders the continuous disclosure of an individual's physical location to their cell provider functionally involuntary. *Id.* at 2270.

*Carpenter* makes clear that the Fourth Amendment specifically protects CSLI for different reasons than it protects physical cell phones or the data they contain. But as the Government correctly points out, *Carpenter* does not directly address the question of whether an individual's reasonable expectation of privacy in the whole of his physical movements extends to CSLI that is generated by a cell phone that belongs to someone else.

The Fourth Circuit in *Beautiful Struggle*, despite contemplating a very different factual scenario, sheds some light on this issue. In *Beautiful Struggle*, community advocates in Baltimore City sought to enjoin the Baltimore Police Department from implementing an aerial surveillance program that used specialized "aerial photography to track movements related to serious crimes"

by capturing "an estimated twelve hours of coverage of around 90% of the city each day." F. 4th at 336. The *en banc* Fourth Circuit concluded that *Carpenter* applied squarely to the aerial surveillance at issue. *Id.* at 341. It reasoned that because the aerial surveillance technology "opens an intimate window into a person's associations and activities, it violates the reasonable expectation of privacy individuals have in the whole of their movements." *Id.* at 342. By reaching that conclusion, the Fourth Circuit implicitly acknowledged that *Carpenter*'s scope is not limited to CSLI generated by an individual's own cell phone, and that a reasonable expectation of privacy in an individual's physical location and movement may exist irrespective of the source of that data. *Id.* at 346. The Court noted that "the [aerial surveillance] program's 'aerial' nature is only incidental to Plaintiff's claim, just as cell phone technology is ultimately incidental to the outcome in *Carpenter*. It is precedents concerning privacy in 'physical location and movements' that control." *Id.*

Mr. Currie also relies *U.S. v. Diggs*, 385 F. Supp. 3d 648 (N.D. Ill. 2019). *Diggs* is, of course, not binding on this Court, but it provides a closer factual analogue to this case and therefore merits careful review. In *Diggs*, the defendant moved to suppress a month's worth of GPS data for a vehicle believed to be the getaway car in a jewelry store robbery. *Id.* Much as Target Phones 2 and 3 allegedly belong to Mr. Currie's alleged victim, the vehicle in *Diggs* belonged to the defendant's fiancé, who had purchased it from a dealership on credit. When asked, the dealership provided police with the vehicle's historical GPS data, which police then downloaded without obtaining a warrant. *Id.* The Northern District of Illinois granted the defendant's motion to suppress based on his argument "that he had a reasonable expectation of privacy in his movements, as chronicled by a month's worth of GPS data tracking the vehicle he was driving." *Id.* at 651. The court concluded that the "GPS data at issue here fits squarely within the scope of the reasonable

expectation of privacy . . . reaffirmed in *Carpenter*" because it "provide[s] a precise, comprehensive record of [Defendant's] public movements over the course of a month." *Id.*

Notably, the court in *Diggs* rejected the government's argument that the Defendant "gave up any reasonable expectation of privacy in his physical movements as revealed by the GPS data because the [vehicle's] owner [] voluntarily turned over the data to a third party [seller], which in turn gave the data to the police." *Id.* at 652–53. The court concluded that "even where an individual voluntarily provides information to a third party, courts must consider the nature of the particular [data] sought to determine whether there is a legitimate expectation of privacy concerning [its] contents." *Id.* The court further explained that "*Carpenter* held that obtaining historical cell-site location information . . . from a third party (a wireless carrier) was a search because it intruded on the target's legitimate expectation of privacy in the record of his physical movements as captured through CSLI. The Court [in *Carpenter*] rejected the government's characterization of its acquisition of historical CSLI as a garden-variety request for information from a third-party witness, reasoning that there is a world of difference between the limited types of personal information" such as telephone numbers and bank records "and the exhaustive chronicle of location information casually collected by wireless carriers today." *Id.*

Finally, *Diggs* rejected the government's argument that the defendant "relinquished any reasonable expectation of privacy when he abandoned the [vehicle] in someone else's garage," concluding that that argument rested "on a misunderstanding in the privacy interests at play." *Id.* at 654. Like Mr. Currie, Mr. Diggs argued that there was a distinction between his privacy interest in the vehicle itself, and his privacy interest in the GPS data generated by that vehicle. The court agreed, finding the distinction to be "crucial":

> If Diggs lacked a Fourth Amendment interest in the [vehicle]. . . the police could have searched the vehicle without implicating his Fourth Amendment rights. ***But it***

>    ***would not follow that Diggs lacked a Fourth Amendment interest in the GPS data the [vehicle] transmitted*** . . . before he abandoned the vehicle. ***Diggs's reasonable expectation of privacy in the GPS data arises from the story that data tells about his movements over the course of a month***, not from any expectation of privacy in the vehicle's interior after he left it in someone else's garage. As Diggs observes, if a person who abandoned the physical object that created a set of data—but that did not itself hold the data—also abandoned his privacy interests in that data, then anyone who trades in his cell phone for a newer model would lose his privacy interest in the CSLI his wireless carrier had collected from the old device. That is not how the Fourth Amendment works; rather, ***the reasonable expectation of privacy inquiry arises from the information that was searched***.

*Id.* (emphasis added).

In response to Mr. Currie's argument, the Government argues that he "unduly stretches" *Carpenter*, which only addresses a defendant's interest in CSLI generated by his own cell phone. Supplemental Opposition at 1. Because ownership of the target phone was not at issue in *Carpenter*, the Government urges the Court to apply the traditional reasonable expectation of privacy analysis from Fourth Amendment cases that do not involve CSLI, but are focused on a privacy or possessory interest in physical devices and/or their data. *Id.* at 2. To that end, the Government relies on several cases that address a defendant's expectation of privacy in physical cell phones and their non-location-related data. Because I agree with Mr. Currie that there is an analytical distinction between the privacy interest in a cell phone and the privacy interest in one's physical movement and location, I will not delve into those cases. *See U.S. v. Evans Landscaping, Inc.*, No. 1:17cr053, 2018 WL 5830877 (S.D. Oh. Nov. 7, 2018) (addressing searches of an email account and an Apple account); *U.S. v. Gonzalez*, 560 Fed. Appx. 554 (6th Cir. 2014) (addressing text messages); *U.S. v. Brewer*, No. 1:13–CR–13–03, 2015 WL 2250150 (M.D. Pa. May 12, 2015) (addressing possessory interest in a target cell phone); *U.S. v. Streett*, 363 F.Supp.3d 1212 (D.N.M. 2018).

The Government cites four Fourth Amendment cases that involve CSLI or other location tracking data, none of which are binding on this Court.[3]

First, in *U.S. v. Ray*, law enforcement obtained a warrant for CSLI data generated by three different phones, one of which belonged to the defendant and two of which did not. No. 20-cr-110 (LJL), 2021 WL 2134861 (S.D.N.Y. May 26, 2021). In assessing whether the defendant had satisfied his burden to prove he had a reasonable expectation of privacy in the three phones at issue, the Southern District of New York concluded that the defendant's submitted declaration satisfied his burden with respect to the phone that was registered to him, but had not satisfied his burden with respect to the other two phones. *Id.* at *11. The court did not analyze the defendant's standing specifically with respect to CSLI.

Next, in *U.S. v. Oakes*, the Middle District of Tennessee held that the defendant did not have standing to challenge the admission of the CSLI at issue, emphasizing that "the Supreme Court has a long history of insistence that Fourth Amendment rights are *personal* in nature" and that a defendant may only challenge the admission of evidence based on an alleged violation of the defendant's *own* constitutional rights. 320 F. Supp. 3d 956, 958 (M.D. Tn. 2018) (emphasis in original). The court provided the following analysis of *Carpenter*:

> In *Carpenter*, the Supreme Court confronted the question of whether, in the modern technological era, a defendant could claim a Fourth Amendment expectation of privacy in CSLI *of his own phone*. Critically, there was no question about the ownership or control of the cell phones for which CSLA was obtained, and standing to bring the Fourth Amendment challenge was never questioned (or even discussed). The Supreme Court's finding as to an enforceable privacy interest in CSLI was . . . premised upon the subject phones being in the possession and control

---

[3] The Fourth Circuit case on which the Government relies, *U.S. v. Rose*, 3 F.4th 722 (4th Cir. 2021), involves an individual's expectation of privacy in a physical package that was addressed to someone else—it does not bear on Mr. Currie's argument regarding his privacy interest in the CSLI tracking his movements.

of the defendants. *Carpenter* says nothing about an enforceable Fourth Amendment privacy interest in a cell phone that a defendant does not know is tracking him or does not admit to possessing or controlling. *Carpenter* clearly reflects that the Supreme Court only considered the issue of someone alleging a violation of the privacy of their own phone. Finding that the case involved the intersection of interests in (a) *personal* movements and (b) information that a person deliberately *keeps to himself*, the Supreme Court held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI.

*Id.* at 960.

I respectfully disagree with this reading of *Carpenter*. It is true that the *Carpenter* Court did not directly address whether an individual has a privacy interest in CSLI generated by someone else's device. But it does not follow from there that the Court's holding was premised on the subject phone belonging to the defendant. In my view, *Carpenter* makes the point that an individual has a *personal* Fourth Amendment interest in CSLI revealing the whole of their physical movements, but without the caveat that that interest extends only to CSLI generated by a cell phone belonging to that person. Furthermore, *Oakes* is factually distinguishable from this case because the defendant in *Oakes* expressly disclaimed any interest in the subject phone and stated that he had never knowingly possessed it, unlike Mr. Currie, who was well aware he was in possession of Target Phone 3 and allegedly used it to call his victim sometime after the alleged assault.

Third, the Government cites *U.S. v. Beverly*, 943 F.3d 225 (5th Cir. 2019), in which, in the Government's words, "the government obtained CSLI based on a search of phone records that belonged to someone other than the defendant." Supplemental Opposition at 3. The Government then quotes *Beverly* as follows: "More fundamentally, though, Beverly lacks standing to assert that the search of Davis's phone records was unconstitutional. Beverly had no expectation of privacy in Davis's phone data, even if the search was unconstitutional as to Davis." *Id.* (citing *Beverly*, 943 F.3d at 238).

13

The Government's characterization of the holding in Beverly is inaccurate. In *Beverly*, the FBI obtained historical CSLI for the defendant's (Mr. Beverly's) phone without a warrant before the Supreme Court issued its decision in *Carpenter*. *Beverly* 943 F.3d at 229. After *Carpenter* was decided, "federal prosecutors applied for—and got—a search warrant for the CSLI they already had (plus quite a bit more)." *Id.* The Fifth Circuit concluded that the trial court improperly granted the defendant's motion to suppress the CSLI generated by Mr. Beverly's phone by failing to apply the good-faith exception to the general requirement for a warrant supported by probable cause.[4] *Id.*

Mr. Davis was Mr. Beverly's co-conspirator in a series of bank robberies. *Id.* at 230. After he confessed, law enforcement obtained Mr. Davis's CSLI and other records from his phone without a warrant, and it was from this information that the government was able to identify Mr. Beverly's phone number and use it to acquire *his* CSLI. *Id.* at 231. Mr. Beverly's motion to suppress argued that the search of Mr. Davis's phone was unconstitutional, and that, because that allegedly unconstitutional search produced the information that led law enforcement to Mr. Beverly's phone, the evidence obtained from Mr. Beverly's phone must be suppressed as fruit of the poisonous tree. *Id.* at 236. It was in this context that the Fifth Circuit noted that Mr. Beverly lacked standing to challenge the search of Davis's phone records. *Id.* at 238. In fact, the Fifth Circuit made explicit in a footnote that "the evidence from Davis's phone that brought Beverly's number into suspicion *was not Davis's CSLI*, it was Davis's toll records." *Id.* at n. 9 (emphasis

---

[4]     The first set of CSLI, obtained prior to *Carpenter*, was admissible under what the Fifth Circuit termed the "*Krull* exception," which permits the admission of "evidence obtained from *warrantless* searches later held to be unconstitutional." *Id.* at 233. The second batch, obtained pursuant to a warrant after *Carpenter*, was admissible under the "*Leon* exception," which permits the admission of evidence obtained when "police acted in reliance on a warrant that was later held to be unsupported by probable cause." *Id.* at 232.

14

added). What's more, the Fifth Circuit went on to point out that "Beverly fails to appreciate that *CSLI and toll records are different, and that toll records are not 'poisonous under Carpenter.*" *Id.*

Finally, the Government cites *U.S. v. Yang*, 958 F.3d 851 (9th Cir. 2020), in which the Ninth Circuit held that the defendant did not have a reasonable expectation of privacy in the GPS data for a rental car that he kept beyond its return date. The Ninth Circuit expressly rejected the defendant's argument that an expectation of privacy in property or premises differs from an expectation of privacy in the whole of one's movements, stating: "We are simply unwilling to conclude that a person has a reasonable expectation of privacy in his movements as revealed by the historical location data of a rental vehicle after failing to return the vehicle by the contract due date[.]" *Id.* at 861.

Having reviewed the above-summarized authority, I conclude that binding law in the Fourth Circuit supports Mr. Currie's argument that he has a privacy interest in historical CSLI revealing his location and movements separate and apart from any privacy or possessory interest in the device that generated that data. *Carpenter*, 138 S. Ct. at 2206; *Beautiful Struggle*, 2 F.4th at 330. *See also Gibbs*, 385 F. Supp. 3d at 648. I am not persuaded otherwise by the limited authority the Government cites to the contrary. And in light of that conclusion, I find that Mr. Currie has a reasonable expectation of privacy in historical CSLI tracking his whereabouts, regardless of whether he owns the device that generated that information.

The Government argues finally that Mr. Currie stole Target Phone 3 from the alleged victim and cannot, therefore, enjoy any expectation of privacy in the CSLI it generated. Supplemental Opposition at 5. Whether Mr. Currie stole Target Phone 3 is not clear from the record before me, but it *is* clear that Target Phone 3 was in Mr. Currie's possession on the date of the alleged kidnapping and assault, and there is no suggestion that it was not in his possession for

the entire span of time for which the Government obtained its historical CSLI. Thus, the CSLI generated by Target Phone 3 amounts to a catalogue of "the whole of [Mr. Currie's] physical movements" and is protected under *Carpenter.* 138 S. Ct. at 2219.

Accordingly, I conclude that Mr. Currie has standing to challenge the search and seizure of Target Phone 3's CSLI. And because I have previously concluded that the April and June Warrants were not supported by probable cause with respect to the CSLI for any date other than the date of the alleged kidnapping and assault, Target Phone 3's CSLI data for February 7–8 and February 10–12 must be suppressed.

I do not agree, however, with Mr. Currie's rather perplexing claim that he has a reasonable expectation of privacy in the CSLI generated by Target Phone 2, which he does not dispute is the victim's personal cell phone that was in her possession on the date of the alleged offense. Target Phone 2 was not tracking Mr. Currie's movements, it was tracking his victim's, and the fact that she and Mr. Currie were in the same place for some of that time is of no object. *Carpenter* is clear that it does not protect data revealing a person's location or movement at a particular point in time, but "is about a detailed chronicle of a person's physical presence compiled every day, every moment, over several years." 138 S. Ct. at 2220. Because Target Phone 2 was not chronicling Mr. Currie's movements, he lacks standing to challenge the CSLI generated by Target Phone 2. Target Phone 2's CSLI will be admitted.

## CONCLUSION

In light of the conclusions outlined in this Opinion, and in the interest of clarity, I provide the following summary outcome of Mr. Currie's Motion to Suppress the cell phone evidence obtained from Target Phones 1, 2, and 3:

|                | **Non-CSLI Data**                                                   | **CSLI**                                                                       |
| -------------- | ------------------------------------------------------------------- | ------------------------------------------------------------------------------ |
| **Target Phone 1** | Motion GRANTED for lack of probable cause. Non-CSLI evidence suppressed. | Motion GRANTED for lack of probable cause. CSLI evidence suppressed.[5]        |
| **Target Phone 2** | Motion DENIED for lack of standing. Non-CSLI evidence admitted.     | Motion DENIED for lack of standing. CSLI evidence admitted                     |
| **Target Phone 3** | Motion DENIED for lack of standing. Non-CSLI evidence admitted.     | Motion GRANTED for lack of probable cause. CSLI evidence suppressed.[6]        |

DATED this  21st  day of January, 2022                   ____/S/_____
                                                         Paul W. Grimm
                                                         United States District Judge

---

[5]     Except for CSLI generated on February 9, 2020.

[6]     Except for CSLI generated on February 9, 2020.